No. 37,726

Granville Stuber, *Appellee*, v. Alfred Sowder, *Appellant*.

(213 P. 2d 989)

Opinion filed January 28, 1950.

*Harry W. Colmery* and *Byron M. Gray,* both of Topeka, and *Edward E. Pedroja,* of Eureka, were on the briefs for the appellant.

*Harold G. Forbes* and *Thos. C. Forbes,* both of Eureka, were on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, C. J.: The appeal in this case is from an order of the trial court overruling defendant's demurrer to plaintiff's petition, the allegations of which may be summarized as follows: In 1946 plaintiff was engaged in farming in the eastern part of Greenwood county, and in June orally contracted with W. A. Nelson to lease a described twenty-three acres of land owned by him, and on the following terms. Plaintiff was to prepare the seed-bed, furnish the alfalfa seed and phosphate at his own expense and to plant the land to alfalfa and Nelson was to furnish the necessary lime; that plaintiff was to cut and bale the alfalfa for a term of three years, retain one-half of the alfalfa for himself and to deliver to Nelson, free of cost, one-half of the baled alfalfa in a described barn, in which plaintiff could also store his half of the alfalfa; that pursuant to this contract Nelson furnished the lime and limed the field and plaintiff prepared the ground, furnished the seed and phosphate and seeded the land to alfalfa in the fall of 1946; that in the spring of 1947 plaintiff cut, baled and stored the alfalfa in accordance with the contract; that sometime in the summer (the exact date unknown to plaintiff) Nelson sold the farm to the defendant Sowder and orally informed defendant of the rights of the plaintiff to the alfalfa and of his right to harvest the same for the crop years of 1947, 1948 and 1949; that defendant took possession

of the farm in the fall of 1947 with the full knowledge of plaintiff's rights; that thereafter plaintiff cut and baled the last cutting of alfalfa for 1947 and stored all of the alfalfa in the barn previously mentioned, placing the one-half of the alfalfa belonging to defendant on one side of the barn and the other half belonging to plaintiff on the other side of the barn; that in May, 1948, plaintiff went to the described real estate for the purpose of cutting and baling the alfalfa in accordance with the terms of his contract and found the gate to the field locked; that he contacted defendant and was informed by him not to come upon the premises, as defendant did not intend to recognize the rights of the plaintiff, although he knew plaintiff's rights at the time of purchasing the property and had recognized them during the latter part of 1947; that plaintiff repeatedly requested permission to enter upon the land for the sole purpose of carrying out the terms of the aforesaid lease, but was refused by defendant, who had proceeded to cut, bale and dispose of the alfalfa, to plaintiff's detriment. There were allegations as to the value of the crop cut by defendant, for which plaintiff prayed judgment, and also allegations that unless restrained and enjoined from doing so defendant would continue to cut the alfalfa and appropriate it to his own use, to plaintiff's great damage, for which he had no adequate remedy at law, and plaintiff prayed defendant be restrained and enjoined from doing so.

A restraining order was issued at the time the action was brought and later a temporary injunction was granted upon plaintiff's giving bond.

The petition was not attacked by motion. Defendant demurred to plaintiff's petition "on the ground that said petition does not state facts sufficient to constitute a cause of action against defendant and in favor of plaintiff in that said petition of plaintiff shows on its face that the oral agreement alleged in said petition comes within the statute of frauds and is unenforceable and void." This demurrer was considered by the court upon the briefs and arguments of parties and overruled, from which ruling the defendant has appealed.

Counsel for appellant contend that the oral contract pleaded was void under our statute of frauds, and that part performance does not render it valid. The statute relied upon reads:

"No leases, estates or interests of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed

or note, in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law." (G. S. 1935, 33-105.)

In 37 C. J. S. 771, the rule with respect to part performance of leases is stated thus:

"The doctrine of part performance can be invoked to remove an oral lease or agreement to lease from the operation of the statute of frauds; and in determining what constitutes sufficient part performance for the purpose general rules have been applied." (Citing cases.)

In *Bard v. Elston,* 31 Kan. 274, 1 Pac. 565, the resident agent of a nonresident owner of unimproved land leased it orally for a term of six years and authorized the tenant to go upon the land and improve it, which he did. The tenant continued to farm the land and pay the rent thereon in harmony with the oral agreement for five years, when the owner brought a forcible detainer action against him and relied, in part, upon the statute of frauds (sections 5 and 6). The court said:

"All parol leases exceeding one year in duration are void under said statute, unless partially performed, and are generally void, even then, as to the part not performed. Generally, where a parol lease is made for a term exceeding one year, and the lessee takes possession of the property, and pays a portion of the rent, but does nothing more than this, the lease will be considered valid, but valid only to the extent of creating a tenancy-at-will, or a tenancy from month to month, or a tenancy from year to year, according to the circumstance of the case. . . . (Citations.)

"Mere possession or mere payment of rent will not, as a general rule, make a parol lease for more than one year valid for the full term. But parol leases exceeding one year, as well as other parol contracts with regard to real estate, may sometimes be taken out of the statute of frauds by a part performance of the contract, and by such part performance be made valid to their full extent. . . . (Citations.) But parol leases for more than one year, in order to become valid by a part performance, should generally be such as would by such part performance become substantially a purchase of an interest in the real estate. . . ."

In *Deisher v. Stein,* 34 Kan. 39, 7 Pac. 608, the syllabus reads:

"Where a land-owner enters into a parol agreement with another person to execute to such other person a written lease for the land for a term of more than one year, and such other person in pursuance of such agreement, and with the consent of the land-owner, enters into the possession of the land, and expends time, labor, money and materials in making improvements upon the land, and in putting it in a condition to use and enjoy it during the term of his contemplated lease, and afterward the land-owner refuses to execute the lease, and ousts the contemplated lessee from the premises, *held,* that the parol

agreement is not wholly and entirely void under the fifth and sixth sections of the statute of frauds, but is so far valid that the contemplated lessee may recover from the landowner such damages as in justice and equity he should recover; that the taking of the possession of the property, and expending time, labor, money and materials thereon, to this extent takes the case out of the statute of frauds."

Counsel for appellant quote an excerpt from the opinion in *Skinner v. Davis*, 104 Kan. 467, 468, 179 Pac. 359:

"The defendants insist that the void lease was validated by part performance—planting wheat. To remove an oral lease from the ban of the statute of frauds, part performance must consist of something more than ordinary use of the land for cropping; . . ."

This is in harmony with the statement previously quoted from *Bard v. Elston*, 31 Kan. 274, 1 Pac. 565. Here the parties were not dealing with an ordinary crop. One of the principal purposes of growing alfalfa is to fertilize the land. The preparation of a seedbed for the growing of alfalfa requires much more labor than for the sowing of wheat, and the seed and phosphates are expensive. Under the facts of this case the trial court might very well have concluded that the improvement of land was to the extent that it would take the case out of the statute of frauds.

Counsel contend that the defendant is the proper party to raise the defense of the statute of frauds. As the grantee of Nelson he may properly be held to be in privity with him. In 37 C. J. S. 719, it is said:

"One who succeeds to all the rights of a party to a contract may plead the statute as against the other party, provided his predecessor in interest might have done so, but not otherwise, . . ."

So the real question is: Could Nelson, in May, 1948, have availed himself of the statute of frauds to stop plaintiff from harvesting the alfalfa and dividing it in 1948 and 1949 without any liability? It seems clear to us he could not have done so. Such conduct would have been taking advantage of the statute of frauds to do the plaintiff an injustice. The plaintiff could have sued for damages based upon *quantum meruit*. We think defendant here is in no better position. See *Nelson v. Street*, 148 Kan. 587, 83 P. 2d 793, and the authorities cited therein and the many cases cited in the annotation following a report of the case in 119 A. L. R. 1225.

In the petition plaintiff alleges that defendant knew of this contract at the time he purchased the property, and took the property subject to the contract, and that thereafter he accepted the benefits

of it. For the purpose of the demurrer these allegations may be taken as true.

We think the trial court properly overruled the demurrer to the petition and its ruling is affirmed.